JACOBS MFG. CO. v. T. R. ALMOND MFG. CO.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

No. 170.

1. Patents (§ 39*)—Invention—Application to Use in Different Art.

To add teeth and a key with cogs to effect motion of the operating sleeve of a drill-chuck, instead of using the fingers or a spanner, as previously done, does not involve patentable invention when such method of imparting motion was well known and used in many arts, although the device was one of utility.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 46; Dec. Dig. § 39.*]

2. Patents (§ 328*)—Invention—Drill-Chuck.

The Jacobs patent, No. 709,014, for a drill-chuck, *held* void for lack of invention.

Appeal from the Circuit Court of the United States for the Eastern District of New York.

Suit in equity by the Jacobs Manufacturing Company against the T. R. Almond Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

This cause comes here upon appeal from a decree of the Circuit Court, Eastern District of New York, dismissing the bill in an equity suit brought to enjoin the alleged infringement of United States patent No. 709,014, issued September 16, 1902, to Arthur I. Jacobs for a drill-chuck. A "chuck" is a device for holding a tool. It comprises several jaws which are opened to receive the tool and then closed on said tool to grip the same securely. The chuck described in the patent belongs to the type known as "sleeve chucks," in which the parts are operated by revolving a sleeve around the chuck. The Circuit Court held the patent invalid for want of invention. 169 Fed. 134.

George A. Hoffman (Heath Sutherland, of counsel), for appellant. Arthur von Briesen and Hans von Briesen, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. The opinion of Judge Chatfield sets forth the facts with sufficient fullness. It is not necessary to repeat them. A brief statement of our conclusions is sufficient.

In 1876 Almond patented a chuck which commended itself to the trade and commanded a good market during the life of the patent. It was operated by revolving a sleeve in one or the other direction. Nothing was said in the patent as to how it should be thus revolved. In practice this was done either by the unaided fingers, the sleeve being

roughened to allow them to grip it, or a spanner was inserted in a hole in the sleeve, and a better purchase thus obtained. The patent in suit describes a chuck identical with the Almond with the addition of teeth to the edge of the sleeve, these teeth being adapted to mesh with the teeth of a key which may be used to operate the chuck, the end of the key being inserted in one or other of several holes in the body of the chuck. The specification does not indicate how much is new, or what is the improvement on the old art. The claims would indicate that the entire device was the product of Jacobs. It is fairly obnoxious to the criticism expressed of a similar obscure and misleading patent in Evans v. Eaton, 7 Wheat. 356, 5 L. Ed. 472. But passing that technical objection we have the question: Is it invention entitling a person to the monopoly of a patent to add teeth and a key with cogs to effect motion to the operating sleeve of a drill-chuck—when such device for imparting motion is well known in many arts, and in this very art had been applied to move the operating parts of chucks of another type (as in Whiton and Washburn)? We are clearly of the opinion that it is not and do not find the circumstance that the improvement has had large sales persuasive to the contrary. The toothed key is, no doubt, bought because it is more useful and convenient than the fingers or a spanner; but utility alone is not enough to establish invention.

Much is said in argument of the "Jacobs chuck" making better sales and being substituted in many workshops for the "Almond chuck." This is not quite accurate. What complainant is selling is in reality the Almond chuck—a Chinese copy of the old one which the trade has known favorably for many years. It is equally well made and sells as cheaply; indeed, there is some evidence from which it might be inferred that a larger discount is offered to the trade. It is not surprising that the trade prefers to get the Almond chuck operated with a toothed key rather than the same chuck operated with a spanner; but that fact alone does not establish invention.

The decree is affirmed, with costs.